Case No. 18-7148. District No. 1, Pacific Coast District v. Marine Engineers, Beneficial Association, AFL-CIO v. Liberty Maritime Corporation of Health. Thank you for the appointment, Mr. Murphy, to the athlete. Thank you, Your Honor, and may it please the Court. There are two issues before you, an arbitrability issue and a Garmin preemption issue, and we believe the outcome on both issues is governed by two basic principles. First, at the pleading stage, courts are required to credit the denials of the non-moving party. And second, contracts must be read as a whole. They can't be interpreted as a matter of law where the whole contract is not before the court. The District Court's decision violated both of these principles. At least 14 documents forming the part of any collective bargaining agreement between the parties are not in the record, and Liberty disputed the authenticity of two of the three documents that were attached to the complaint. Excuse me. So can we just go one by one? Happy to, Your Honor. Let's talk about the tanker vessels agreement and put aside, for a moment, put aside the question of authenticity, okay? As I understand it, you don't dispute that that agreement remains in effect, correct? No, it's not quite correct. And the basis for the dispute... I mean, I understand you dispute the other one, the dry cargo. If I could direct the Court to our answer to paragraph 8 of the complaint, I'll walk you through this. You'll see there are four sentences in paragraph 8. The first sentence, which says, these agreements started in 1988 and were signed. That paragraph is basically admitted in the first answer to our, the first sentence of our answer to paragraph 8. Now look at the second sentence and the third sentence. A copy of the 1986 to 1990 tanker vessels master agreement at Liberty's signature page is attached here to his Exhibit A. That's denied. The third sentence, a copy of the 1986 to 1990 dry cargo vessel master agreement is attached here to his Exhibit B. That's denied. The last sentence is also denied. So, what is admitted? The 2012 MOU, the authenticity of that agreement is admitted. And we admit that there's one sentence that they rely on heavily that exists in what is currently the collective bargaining agreement. Now, I asked you a question about the tanker agreement. So, it's been modified repeatedly, and that is undisputed. It's undisputed that there have been extensive modifications here. So, but what you don't know is what that complete agreement is. And this is outlined on pages 7 to 9 of our opening brief if you want to see a few more details on that. But you can't even conclude that there's a broad arbitration clause in this case because you don't even have the whole arbitration clause, let alone the whole collective bargaining agreement. Have you said in your answer or your brief that these missing pieces, what their impact is on the arbitration agreement, the original arbitration agreement? It's one thing to say there's lots of missing pieces, but they say they all had to do with hours or years or locations or who you employ or things like that, but nothing to do with the arbitration provision. That would be one issue. But if you were saying that there are agreements out there that have to do directly with the scope or continuing coverage or reach or viability of the arbitration provision, that's another thing. So, which is it? A, just other stuff, or B, you're missing parts of the arbitration agreement? I think it's both. And if you look at the district court's opinion, you'll see that the opinion relies on the correspondence that went back and forth between the parties. And the union, of course, takes its position on the meaning of various agreements outside the record. We take our position. But it's very clear from the correspondence that she cites at page 334 of the opinion and in other places that she was aware that there was this disagreement about scope and that there were agreements that weren't before her that she was relying on. So that's the first thing is that that's made clear. The second thing is if you look at the rules... Would you argue to the district court that you're missing, you cannot rule because you don't have the full arbitration agreement in front of you? We did. I think the best example of that is at page 6 of docket 11. We said that the union's factual background... Hang on, give me a second. What page, page 6 you said? Page 6 of docket 11. Is that your opposition? That's our opposition, yes, Your Honor. We said the union's factual background is predicated entirely on its own allegations in the complaint and fails to acknowledge, much less apply, Liberty Maritime's answer or its affirmative defenses denying the union's material fact contention that Liberty is a party to a contract requiring arbitration of disputes. That's denying, the district court understood that to be, we're denying that we're covered by an arbitration agreement, which is the legal debate in the case. What I was asking you is where did you tell the district court that you're missing pieces of the contract? You're missing pieces, as you just said, that tell you what the content of the arbitration agreement is. That's different than saying generically we think we're not subject to it. That's a legal argument. Where was your factual argument? You don't have the whole arbitration agreement in front of you. Well, if you look at the correspondence on which she relied... I'm asking where your argument is to the district court. We did not use the words missing pages. Did you argue to the district court that she did not have in front of her the full arbitration agreement, as opposed to other missing pieces of our contracts? Let me, yes, and let me, we should back up to the Rule 16.3 phase of the case, because we said there were material factual disputes about whether there's an agreement and what its scope is. And so... I get, whether there's an agreement, and that's, you know, that's what you're litigating over, the legal question of whether there's an agreement and whether it covers this ship is a legal question. Whether, in contract law, whether you have all the pieces of the contract, what constitutes the contract? What are its pieces? That's the sort of factual issue on which you would get an inference in your favor if you made that argument. I just was having trouble being clear on what your arguments were to the district court, whether she was on fair notice that you thought she needed to have more... That she didn't have the whole arbitration agreement in front of her, as opposed to a distinct argument for the arbitrator to decide whether other things pertain to the scope of the arbitration agreement. I pointed you to passages in our brief. The Rule 16 said there's a material factual dispute on these issues. And I don't think there's any question that she was aware, because she is relying on the correspondence between the parties, where we're saying you've got all these different provisions that are relevant to the issue. And the union is saying we rely on these other set of provisions. There's been no suggestion of forfeiture. I guess there's... In my head, what I'm trying to distinguish is two things. I'm sorry if I'm not being clear. There's one argument that says, yes, here's the arbitration agreement. We get it. We read it. That's an arbitration agreement. We're not in it because there's these other communications that have happened that said this ship is not going to be in that. It's limited to maritime security program ships or something like that. That's one argument. That's a legal argument about the scope of that arbitration agreement. There's another argument that would say you can't just look at that arbitration provision. It's actually you need these three things as a whole to even understand what the arbitration provision is. And that's what you're missing. You don't have the whole arbitration provision in front of you. And those feel to me like different arguments. And I think I can... We did point to our denials, Your Honor. And where I began with Judge Cassis is by saying there's a denial of everything except the one phrase that... We don't dispute that what you could call the all disputes clause exists in the current agreement between the parties. But that's not even the complete... That's a current agreement, a continuing agreement. For whatever its scope is, there's a continuing agreement. There is a continuing agreement. The 2012 MOU is undisputed. And it's undisputed that that language in isolation is part of what exists today. But you can't even make the determination that that's a broad arbitration clause without the balance of what was originally Section 2, let alone the rest of the agreement. But can you decide that that is the relevant arbitration clause? Whether it's broad or narrow, we're fighting over. That's the arbitration clause we'll be fighting over. It's part of the arbitration provisions of the agreement. I don't think you can conclude that it's complete. Are there other arbitration provisions that are missing? There are many other dispute resolution processes in the contract, and we collect them at pages 13 to 14 of our reply. And that's actually one of the things that highlights why it's dangerous to infer that there's nothing in the stuff that's missing that would say this ship is not or this class of ships is not included. If you look at pages 13 to 14, you'll see there are some things where liberty itself is given the final abiding authority, or a doctor appointed by liberty, or a committee appointed by the parties, or a committee appointed by liberty. And that's to say nothing of other cases involving other types of provisions that then amend the part that's undisputedly before the court. So I think the best I can sum it up is to say it's not even undisputed what the whole arbitration clause in this case says, let alone what the whole collective bargaining agreement says. Can I just take you back to the tanker vessels agreement? Of course. I was thinking about this case on the assumption that you conceded that it was still in effect. And you said no, and that startled me a little, and I've been digging through the papers. And what I find is in your opposition, you cite paragraph 8, but in the brief you filed you say the tanker vessels agreement covers, present tense, some but not all U.S. vessels managed by liberty. That sounds to me like you're saying the agreement, just the tanker vessels agreement, remains in effect but doesn't cover this ship. And I think you have to look at everything we said below together, Your Honor, because we're not disputing that part of the tanker agreement remains valid today. But it's been repeatedly amended, which is why exhibit A, we denied the authenticity. It doesn't look like that today. And so this is outlined again on page 7 of our brief. I want to be clear. It's not that we're saying nothing remains from the tanker agreement. And I think that's been our consistent position throughout. But we are saying there have been some really material changes. And the only thing that we've expressed, the admitted still exists, is that part of the agreement. If it remains in effect, is it too much to infer that the arbitration clause remains in effect? This may be a different way of asking Judge Millett's question. You said if it remains in effect. If you look at the language of that arbitration clause, it says all disputes arising in this agreement shall be resolved in accordance with this agreement or this section of this agreement. You don't know what this agreement is and you don't know what this section is. And there's no reference to arbitration. So now look at the two of us. I mean, there's a unitary document that's called the tanker vessels agreement. And you acknowledge that you signed it and you acknowledge that it remains in effect. So as to that one piece of the case, your position just seems to me weaker than the rest of the case where you say the other master agreement is not in effect and we have no idea what's in all of the MOUs and the side letters and such. I think the only fair reading of our... So if you say the tanker agreement was signed, is in effect. And the open question is, did we get out of it somehow? That sounds like the dispute that was teed up in Liberty One. Two things. First of all, there's been no allegation that the ship here is a tanker. So even if it were fully in effect, but I don't think that's really the most important... That goes to merits. That's just an argument that you'll win before the arbitrator. But the more important thing is you keep referring to the tanker agreement being in effect. I don't think we've ever said point blank it's in effect. Parts of it are in effect because that's the agreement that's been repeatedly modified. That's the agreement that was extended to the MSP vessels. That's the agreement that then had additional amendments that named specific ships. But we've never said the whole thing is valid. And if you look at our denials, we said quite the opposite. That the whole thing essentially doesn't exist. Now we've explained a bit more what we mean by that in the briefs. Because we're not saying this is a forgery case. That this document was just fabricated from whole cloth. But we are saying that's not the agreement. There's been a lot that's happened. Thirty years. Fourteen documents outside the record and more. In addition to correspondence containing clear statements about the import of these agreements. So... If you have, you would have all these in your possession. You're the other party to these agreements. If there's some piece of paper that says that doesn't apply anymore to this ship. Why wouldn't you have brought that forth to the district court? There's a practical answer to that question, Your Honor. And there's a legal answer to that question. You're asking me we didn't have the burden, right? Well, there's a little more to it than that. But let me start with the practical. Because I think that may be part of what you're asking. The practical reason is you're dealing with 30 years of a collective bargaining relationship. Everybody agrees about that. Tons of agreement. As outlined on page 30 to 31 of our opening brief, there are some mismatches here. There are some cases where one side is saying, you know, we think these are the pages. And the other side is not. So there are some genuine issues of what does the actual agreement look like? We said we needed some minimal expedited discovery in our Rule 16.3 statement in part to sort those. What do you mean discovery? You have your copies. We don't know for sure if we have everything. We now know we have the 14. But this thing has been repeatedly amended, different personnel, changing over time, et cetera. I guess it's been amended in all kinds of ways. I'm back to where I started. What matters was the dispute resolution provision change. You would know if you're taking the position you're not covered, you must know somewhere, you must have in your possession pieces of paper that show that as to this ship or non-MSP ships or whatever your position is, there is no arbitration agreement. The evergreen status, if it ever existed at all, was changed through subsequent agreement. That's absolutely correct. Okay. And you have that piece of paper? Well, we have a lot of pieces of paper. I'm asking about things that operate on the dispute resolution process, not other aspects of these massive agreements. Well, I do think there are several pieces that go to the scope. But, yes, we have the 14 documents. Why wouldn't you have brought those to the district court's attention? Because there's a major difference between Rule 12 and Rule 56. And Rule 12 is about framing the factual dispute between the parties. We made clear denials, and we had good-faith grounds for making those denials. You'll look at Rule 56C. Well, the district court understood, rightly or wrongly, the district court understood your denials. As I read the decision to say, yeah, there's an agreement, but it doesn't cover this, the sort of breadth issue that Judge Katsas was referencing, as opposed to, that's the wrong contract. Well, Your Honor, when there have been multiple amendments to an agreement, and we say we don't accept Exhibit A and we don't accept Exhibit B, and then page 3 of the opinion, or page 2 of the opinion, I think, says, here's Exhibit A and here's Exhibit B, and let me quote from it and create a baseline that basically all these ships are covered. Now, where is the evidence of an exclusion? That is legal error. You don't get to first base without the whole contract, and we did not have an obligation to put them in. We could have done that. It would have been permitted. It might have converted it to summary judgment, but we told the court at the beginning, we think this should be dealt with on an expedited basis that leads to summary judgment. She said, no, I'm going to decide it under Rule 12C. So at that point, then, I think it's instructive to look at the difference between the text of Rule 12 and the text of Rule 56, and Rule 56C says this. 11 and 12 of your briefs, you go through a lot of things that these other agreements might say, possibly could say, your possibilities, 11 to 12. Of the reply. Of the reply brief. Provision terminating the agreement, that would be quite relevant, creating an exception that would cover here. But you said there are possibilities, and yet you must have these documents. What I'm trying to ask is, can you tell me, are there in fact, do you have, amongst these missing documents, I get your argument there's lots of missing pieces, are you saying, should I read this, are you saying that amongst those pieces is actually a piece of paper that terminates the agreement, creates an exception to the agreement, rescinds the provision, supersedes evidence as an intent for certain disputes to be non-arbitrable? I am saying that there are documents that speak to scope and carve-outs. I'm not saying, the reason that, we try to handle this very carefully, Your Honor. We don't want to make representations about what's outside the record. So we said, all right, why don't you look at what's in. Pages 13 to 14 of our reply tell you what's in the record. No, you go to the district court at this point. I thought you were speaking about our reply. Yeah, I know, I know. You talked to us about possibilities, and what I'm asking, did you tell the district court, we're very concerned, you've got the wrong, you've only got half the contract here. In fact, there are papers that terminate, create exception, rescind, supersede. The correspondence says this. The correspondence says that carriers like the piece, pure car-truck carriers, that there wouldn't be a need for amendments to these agreements that add vehicles by name if they were covered. I'm trying to tell you what you've got. I'm trying not to make representations of what's outside the record, but also to point you to the correspondence, the authenticity of which is undisputed, and say, this is the direction it points in. The reason our reply is written the way it is, is to say, look, if you just look at the contractual record you have, there are all kinds of exceptions. And here's some other cases that show you can't make this inference. But I want to come back to Rule 56C. A party asserting that a fact cannot be, or is, genuinely disputed, must support the assertion by materials in the record, including depositions, documents, et cetera. You will search Rule 12 in vain for that sort of provision, and there's a very good reason. Because Rule 12 is about identifying the factual dispute between the parties, not about creating a record. And there were practical reasons here why there were a lot of documents. We thought perhaps things could be worked out with the union in terms of identifying, do we agree about which versions of these documents, and then we can debate what amends what. But we were not obligated to give the district court those materials. Now, on the garment preemption issue, the fundamental thing, well, if the court would like me to address it, I'll address it. Sorry, I think we'll give you some time for that. That's fine, Your Honor. Good morning. May it please the Court. My name is Mark Murphy. I'm here on behalf of the appellee of the Union Marine Engineers Beneficial Association. Just to pick up the argument where my colleague left off, the question is with respect to the tanker agreement. Now, the union may have a different opinion on the scope of the agreements, but let's assume for purposes of the argument that the tanker agreement is the issue that the court is concerned about. And, Your Honor, you asked about whether or not it's still in effect. There's a couple of places you can see that clearly Liberty recognizes the tanker agreement is still in effect. The first is in the letters. There was a back and forth between the parties when this ship became an opportunity for the union and for the company. Let's assume it is. I think it's more than an assumption, though, Judge, because when Liberty came to us, the first letter that they sent to the union, which is on Joint Appendix 284, they specifically make reference to the tanker agreement as the underlying agreement. And what they characterize is our reading of this agreement. So that's an issue of our reading of it. That right there tees it up for this is what we interpret the contract to mean. That's for an arbitrator to decide. So I'll give you that. There's a lot of dispute about a lot of side agreements, MOUs, letters that have happened in the 30 years since. Sure. And we don't know what's in them. Well, I'll tell you what we do know is that there's none in them. Let's assume the tanker agreement just by itself is different because we think it's in effect as to Liberty. Sure. Would you be satisfied going to arbitration just on the question whether that one agreement covers this one ship? No, that would be a question for the arbitrator to decide. But in other words, just pinning, limiting the arbitration to the four corners of the one agreement that you tendered to us in Exhibit A or B or whatever it is. Because I thought that it's pretty obvious that a ship carrying tanks or whatever it is is not a tanker. And your theory is not so much that you fit within the four corners of just the tanker agreement. Your theory is that over the course of 30 years, it's somehow become the case that this web of contracts covers all of their stuff. Sure. And if I could respond to that, the tanker agreement, as you recognize, that does have broad arbitration provision. And that was the same arbitration provision that Liberty won this court found to be broad enough to send the parties to arbitration on a separate issue. The tanker agreement is not the only agreement between the parties that's in the record, Your Honor. The 2012 MOU, which is actually expiring in the middle of June. Right. But let me just say that that agreement does make reference to other side letters, memorandums of agreement. So that is for an arbitrator to decide. The issue is, okay, we have an arbitration clause. It's broad. One side, the union, says this Liberty Peace work is bargaining unit work. The other side, the company, says, no, it's not, for whatever reason, because it's a different class, because it's in a different program. That is teed up now for arbitration. And the arbitrator can consider both sides' arguments. But once you go outside the four corners of that one agreement, you start to lose me, because all you have, you have the second master agreement and a dispute about whether it's in effect as a liberty. Well, I certainly don't. And you have all these other, you have the 2012 MOU, which makes reference to sometimes CBA is plural, sometimes CBA is singular. You don't know what the cross-reference is. And you have all these other documents referenced that aren't in the record. Right, Your Honor. And I certainly don't mean to lose you, and that's not the point of our position. And I think what Judge Berman Jackson recognized is that's a substantive question. The question for the Court is, is there an agreement between the parties? The answer to that is, yes, there is. There absolutely is an agreement. Liberty doesn't dispute that. Then the next question the Court has to ask is, does that agreement have a broad arbitration provision? The answer to that, again, is yes. There's no dispute to that. Liberty won't also found that. Except, sorry, just all of that uncertainty about these other agreements go not only to scope but to arbitration. Sure. And we don't know which of those agreements has arbitration clauses or cross-references back to either the tanker or the vessels agreement. Well, I guess I would answer your question. On the arbitration issue. I would answer your concern as to what Judge Millett said earlier. Of the documents that supposedly are missing, these 14 documents that are missing, Liberty could have easily put that in front of the judge at the district court and said, this memo you amended, the provisions of the arbitration clause doesn't apply to this. This modified it in some way. That didn't happen. It didn't happen because that's not what these documents say. So why isn't it your burden to either have put them in or at least to have alleged in your complaint, yes, there's these other ones, they have nothing to do with the continuation of this arbitration agreement, which they could then affirm or deny. Sure, that's a great question. The short answer is that we never anticipated that Liberty would come out and say, we have a question on authenticity of the tanker agreement. We have a question on whether the arbitration provision applies. Well, we didn't. You could have amended your complaint. We didn't think we needed to, Your Honor. We think we have enough in the complaint now. Can you point to something in the record that shows that the Liberty piece is included within the arbitration, within the scope of the arbitration clause? Well, we can point to, again, as my colleague said, we can point to the letters back and forth that are in the joint appendix prior to our motion to compel arbitration. But respectfully, Your Honor, that question is not for the court. That's not an issue that's presented to the court. That's not an issue that the district court considered. That's truly an issue classically in labor law for an arbitrator to decide, the scope of work. It's just like if Liberty was a warehouse company and they were opening up another warehouse. Well, there's a question about whether the parties agreed to arbitrate disputes relating to that vessel. They agreed to arbitrate all disputes under the contract. And what we're saying, the union is saying, that's a vessel that's under a U.S. flag, and our position is we interpret the contract to be covering that vessel. You interpret the contract to be equal to the vessel. Absolutely. Absolutely. But, I mean, given all the other documents that we don't have. But, again, Your Honor, that's not – those documents don't speak to the broad arbitration clause that's in the underlying master agreement. And what you're speaking to now is absolutely relevant if you were the arbitrator that the parties had chosen to decide whether or not the Liberty piece work is covered by the contract. That's not what either side is asking. That's not what Liberty is asking. Whether the arbitration clause is broad or not, or whether the arbitration clause is. Well, I didn't hear Liberty say that the arbitration clause isn't. In fact, what they said, and, again, with respect to their letters and in their opposition to our motion. They say there's all these other documents that might well show that it no longer is, or it's only half of what it originally was. Your Honor, first thought. What burden was it to put all the other relevant pieces in or to say there are no more relevant pieces? Well, I think that the burden, if it was – if there were relevant documents that spoke to the arbitration provision, certainly the union would have put those in. But we also didn't want to burden the record. The two master agreements – I understand an allegation that says, to be clear, court, that was 30 years ago. You'll note there's a memorandum of understanding. Things we have attached reference a bunch of other agreements and communications. So you've already put into the record that that's not the whole story. There's more to the story. There's other pieces. It's been a long time, and a lot of paper has passed between the two of us. Right. So somebody had the burden, it seems to me, of establishing whether those – whether or not those things change the agreement to arbitrate in the first instance. Not what the answer is as to Liberty Peace, but whether they – what the agreement to arbitrate is. Sure. And that's where the burden that I'm struggling with. Well, I understand, and I think the burden at that situation would be on the company. If they're saying we have these 14 documents that aren't in the record and we need to see those, as you said, Your Honor, they're parties to the contract. So they should have all of those. What is the contract? The contract is – well, there's master agreements that have been built up over time with a number of different employers. So the contract isn't just the tanker agreement? No. The tanker agreement, maybe the dry cargo agreement or something putting them together plus other things? Yes. Yes. But my point is – But take dry cargo vessels, right? They clearly say they're no longer in it. And if they're no longer in it, the agreement – I'm sorry, the clause in the dry cargo vessels to arbitrate all disputes arising under the dry cargo vessels can't be invoked against them to arbitrate an issue under that agreement. But that's not an issue here, Your Honor. I already said for purposes of argument that they've acknowledged the tanker agreement. The tanker agreement and the dry cargo agreement have the exact same broad arbitration provisions. So even if we just set aside the dry cargo agreement – If I ask them if they agree that there is still a broad arbitration agreement through the tanker agreement that defines the scope of their arbitration duties, do you think they're going to say yes? I had read them as saying no. Well, I would expect them to say yes because we're in the process of arbitration right now. If they say no and they say my answer says no, then whose burden was it to establish? Your Honor, I'm not sure how they could say no since they've already recognized the tanker agreement is in effect and the tanker agreement has the broad arbitration clause. But they've recognized, as you've recognized, as your complaint recognizes, that's not the whole contract. The whole contract has spawned other agreements, right? It's not just that 30-year-old document. Sure, sure. So the contract is much bigger. So that's why I keep going on and on. When you say tanker agreement, do you mean tanker agreement and everything that's come afterwards? Or do you mean the original tanker agreement? It's a live document. I mean, this is not a static document. These are parties, like you said, that have had a collective bargaining relationship and are in negotiations. So when you say tanker agreement, you think that means everything up to, I don't know if there's anything after 2012, but up to 2012? Sure, sure. That's all the tanker agreement. Yes, but first of all. That's all the tanker agreement. When you say tanker agreement. That's the agreement between the parties. That's the contract. That's the agreement between the parties. That's the contract. That's the labor contract. But a couple of things, Your Honor, with respect to. So if that's true, then there really is no way to give you the sort of narrow arbitration that I had in mind, which is to just take the one full version of the tanker agreement that you tendered and say arbitrate the interpretive question under that one document but nothing else. As I just said, that's not the entire agreement. But let me just point out with respect to whether or not Liberty would agree that the arbitration provision is still in effect. At Liberty won. Liberty won. We had the same tanker agreement that was looked at. And there was no issue. Liberty didn't come to the court and say, hey, we don't think we have an arbitration agreement. So now that they're saying it now, they didn't say it then. That's the answer to your question, Your Honor, earlier. The second point, again, is. Well, people change litigation arguments all the time. They can change facts. I don't know if they can change facts. A fact is a fact. But, again, with respect to the live document, these 14 agreements, the documents that were not in the record, we didn't think we needed to put them in the record because the record is clear with respect to the arbitration provision. It's clear with respect to the MOU in 2012. That makes reference back to the CBAs. And at that point, if Liberty thought there was something relevant in those 14 documents, they could have certainly. But you're the one that asked for judgment as a matter of law. Yes. So why did they have to come forward? Why didn't you have to, again, either put all the pieces in or put all the pieces of all the additional agreements of this living document that are at all relevant to the continuation of the arbitration agreement? We did, Your Honor. Yes. My point is we did. Where does the complaint say that we have in here everything that every document since the original tanker agreement and cargo agreement going forward, at least to 2012, that bears on arbitration agreement? The reference to the arbitration provision itself. In the 2012 MOU? MOU. To the tanker agreement and then the reference to the 2012 MOU. Again, we weren't going to burden the record with extraneous documents that spoke not at all to the arbitration provision. There were agreements that may have altered the wage rate. There were agreements that may have altered certain things. But there's nothing that. But the problem with your MOU is it says all other terms and conditions of employment of the CBAs, side letters and letters of understanding are unchanged. So that seems to say I need to have more in the record than just the 2012 MOU and the original tanker agreement. I need to know what the current state is. Don't you need to put into the record, if there's anything in the CBA provision, side letters and letters thorough of understanding? Not if those letters did not alter, modify, or end the party's obligation to submit all disputes to binding arbitration. And those letters, memorandums of agreement, and side letters did not. But they dispute that. They argue that. But as you said, there's nothing. No, but they dispute that. There's nothing that they have brought forward to say that this is. And, Your Honor, again, they've been a party to 30 years. If they were aware of something that obviated their requirement. But you could have moved for summary judgment. You moved for 12C. We did. Which means we need to find everything we need to rule for you in your complaint and its attachments. Right. Correct? Yes. They don't have to do squat. Absolutely. If your complaint and attachments tell me that the agreement is bigger than what you've given me, then how can I make that decision as a matter of law? Again, because your question, the question for this Court, as the question for the district court was, is there an agreement? The answer is yes. Does that agreement contain a broad arbitration provision? The answer is yes. Is there more in that agreement? Sure, there's a lot more. Would you like to go through every page of the agreement, knowing that it has nothing to do with the question of the broad arbitration clause? So our position is we did provide the Court below with enough. The judge ruled based on the pleadings. Does your complaint say there are no more changes to the arbitration agreement or the dispute resolution process? No, Your Honor, and frankly, again, we're not anticipating that. I get that, but I'm just saying you just said the reason that your complaint is sufficient, even though there's this reference to these other agreements, is that none of them bear on the scope or continued existence of the arbitration agreement, but then you said your complaint doesn't say that, and your complaint has to be the sufficient basis for a ruling as a matter of law. The complaint says that the parties have a broad arbitration provision. Liberty has admitted that. So based on the answer and based on their admissions, we don't believe we need to do anything else, and the ruling below should stand. Thank you. Thank you. Does Mr. Johnson have any time left? We'll give you two minutes. I'd like to begin with Judge Millett's comments. Two of her comments, somebody had the burden, and under black-letter civil procedure law, it's the movement. It's not the non-movement. As you colloquially put it, we don't have to do SWAT. Now, there were some good reasons we didn't do that. Brief summary judgment period will change the record, and it can be decided. But that's the principal basis for reversal. Mr. Murphy referred repeatedly to the broad arbitration clause, and he said things about the documents that you don't have. Well, those documents don't speak to the broad arbitration clause, and not if those letters did not affect the broad arbitration clause. Their position rests on asking you to make assumptions about what is not before you. That would be a violation. So do you have a good-faith basis for representing to us, or a good-faith basis for putting into question whether any of those side letters and MOUs and such might impact the arbitration clause? Yes, Your Honor. And, again, even if it's just an issue of scope, of what the arbitration clause covers, you can't conclude that it's broad without the whole arbitration clause. You don't have the whole arbitration clause. The original agreement had Section 2A through P, and they gave you one sentence from 2A and said, that's all you need to see. There's a lot more there in addition to modifications. On the Liberty One issue. Mr. Chairman, just to be clear, there can be a lot more there. You can imagine the headache for a district court if something like this comes back. And the district court says, show me. And then you come forward and there's changes that have nothing to do with this dispute. So it's one thing to say they're changes. Of course. But they have nothing to do with your agreement to arbitrate as to the breadth of the coverage of the cargo or tanker agreements. It's possible. We had a good-faith basis for that. Do you have a good-faith basis for believing it wouldn't be a total waste of time? Yes. And the district court that there's something material to come forward with in your limited discovery that you want. Yes, Your Honor. And that the record will substantiate what the correspondence said, which is that you don't need these extra agreements adding ships if our position weren't supported on scope. If I could just speak briefly about Liberty One. He referred repeatedly to that case. It was decided on a summary judgment record. It involved a different contract, a 2010 MOU. And there was only one issue, the impasse duration issue. Obviously, if there had been a dispute about whether the 2010 MOU wasn't everything you needed, the case would look more like this one. Here there is a dispute about what you need. And also it's on summary judgment. Absolutely, Your Honor. If there are no further questions, I'll leave the Court to reverse. All right. Thank you. The case is submitted.
judges: Millett, Katsas, Rao